(Muskingum County Common Pleas.)

NANCY KRIGBAUM v. ROBERT T. IRVINE, Administrator.

A woman entered into an ante-nuptial contract with her intended husband, whereby she agreed to accept in lieu of dower and all other claims against her husband's estate, in case she should survive him, the interest on the sum of $4,000.00 during her life, to be set aside for that purpose from his estate, and to be held by the executor as trustee and by him invested. In his will the husband provided that there should be set aside from his estate $4,000, the interest to be paid to his widow in lieu of her dower and other statutory claims against his estate, the principal to be held and invested by the executor as trustee, in accordance with the ante-nuptional contract. On the death of the husband the widow elected to take under the will, and the executor thereupon separated $4,000 from he proceeds of the estate and invested the same in stock, paying the interest regularly to the widow for a number of years, when the stock greatly depreciated and no more dividends were paid thereon. The widow thereupon sued the administrator de bonis non, who had succeeded the executor in the administration of the estate, to compel him to apply other trust funds held by him in trust for other devisees under the provisions of the will, to make good the amount of $4,000.00 to the interest of which she claimed to be en-titled under the ante nuptial contract. Held:

(1). The provision made for the widow by the will or ante-nuptial contract was not an annuity.

(2). Having elected to take under the will, she waived her rights under the ante-nuptial contract, as well as her dower rights, and she has only the rights of a legatee under the will.

(3). When, as in this case, there has been a separation of funds and an appropriation by the executor to the particular purposes pointed out by the will, the executor, who is also named trustee for the funds, loses his character as executor as to these trust funds, and becomes simply and only a trustee.

FRAZIER, J.

This case was submitted on the pleadings and the evidence.

The petition of Nancy Krigbaum, plaintiff, v. Robert T. Irvine, administrator de bonis non with the will annexed of Henry Krigbaum, deceased, and others, avers, that on the 4th day of January, 1875, the petitioner, Nancy Krigbaum, entered into a contract in writing with Henry Krigbaum, deceased, whereby it was agreed between them, in consideration of a contract to marry, among other things, as follows:

"In case the said marriage shall take effect, and the said Nancy M. Walker" (i. e., the petitioner in this case) "shall happen to survive the said Henry Krigbaum, the said Henry Krigbaum does hereby charge upon his estate as a debt, and upon his heirs, etc., for the performance of this covenant, that within reasonable time after the death of the said Henry Krigbaum, his executor or administrator shall, from the personal or real estate, or from both, as may be necessary and seem best, set apart the sum of four thousand dollars, the same to be by them invested as soon as practicable, in good safe bonds or stock or loaned upon real estate security, and the proceeds thereof to be paid to the said Nancy Krigbaum (Walker) annually during her natural life."

That is the ante-nuptial contract.

The plaintiff further says that she afterwards married the said Henry Krigbaum in pursuance of said contract; that the said Henry Krigbaum, in his life time, made and published a last will and testament, wherein, among other things, the said Henry Krigbaum duly ratified and confirmed the said contract, and incorporated the same in his said will, and made the same a part thereof.

Plaintiff further says that, on the 21st day of May, 1885, the said Henry Krigbaum departed this life, leaving said will and testament, which was duly

filed in the probate court of Muskingum county, and that plaintiff duly elected to take under the provisions of the will.

Plaintiff further says that F. H. Southard, Esq., was duly appointed executor of said will by said court. Afterwards he resigned, and thereupon William Krigbaum was duly appointed and qualified administrator of the estate with the will annexed; and afterwards he resigned, and Robert T. Irvine, Esq., was thereupon duly appointed and qualified administrator de bonis non with the will annexed, and is still acting in pursuance of such appointment in the discharge of his duties.

The plaintiff further says, in her petition, that, shortly after the appointment of Mr. Southard as executor, he, Mr. Southard, purchased four thousand dollars worth of stock of the Ohio Iron Company, for the purpose of owning and holding the same as such executor, and from the proceeds of the dividends which he expected to receive therefrom, he purposed and intended to pay to this plaintiff as the widow of Henry Krigbaum, an annuity of two hundred and forty dollars per annum.

Shortly after procuring said stock, said Ohio Iron Company defaulted, and ceased to pay interest on said stock, or any dividend thereon; and that during the course of said administration, said administrators, as successors of said executor in the office of said trust, sold from time to time and finally disposed of all of said stock, from which she is informed said administrator has now in his hands, as proceeds arising therefrom, about eight hundred dollars.

Then the petition further avers that she was never consulted or advised about the investment of these proceeds, and that she only learned of it long after said stock had become worthless.

Plaintiff further avers that the administrator de bonis non has failed and refused to pay her any income or proceeds from said sum of four thousand dollars so set apart for her, or from any other source; and that the said Henry Krigbaum died seized of a large amount of real and personal property, which was devised to and divided among the beneficiaries of his estate.

The petition further avers that in an action brought in this court, wherein said Nancy Krigbaum was plaintiff and William Krigbaum, administrator de bonis non with the will annexed, was made defendant, it was considered, adjudged and decreed by this court as follows:

"The court do find that the allegations of the petition are true, to-wit: Plaintiff is entitled to the income or interest upon said sum of four thousand dollars, commencing one year from the death of Henry Krigbaum, May 21, 1886."

The petition further alleges that, the defendants, Mary L. Coon, Stanis Krigbaum, and Altha Sutton, are legatees under the said will, and that said administrator, Robert T. Irvine, has now in his possession certain funds, which the said defendants claim should be paid them, or the interest thereof.

Plaintiff claims that her right to be paid said annuity out of the proceeds of the funds, is superior to the rights of these defendants, and prays for an order of the court, directing Robert T. Irvine, as administrator, to pay her said annuity, subjecting all the funds and property of said estate to the payment thereof, and prays for an order of the court requiring said Irvine to take steps to procure from the assets of said estate, a sum sufficient to regularly and promptly pay said annuity.

To this petition, Robert Irvine files his answer and cross-petition, Mrs. Sutton files her answer, Stanis Krigbaum files his answer.

Now, I find the following to be the facts in this case:

In 1875, the ante-nuptial contract was made, as set out in the petition, between Nancy Walker and the testator, Henry Krigbaum.

In 1885, Henry Krigbaum, the testator, died; his will was duly admitted to probate; F. H. Southard, Esq., the executor named in the will, duly qualified as such executor; and the widow duly elected to take under the will.

This will contained thirteen items, only the first ten of which have any bearing upon the suit in controversy here.

Item first of the will bequeathed to Henry Krigbaum, as a special legacy, the sum of five hundred dolars.

Item two bequeathed to the son, G. D. A. Krigbaum, a special legacy of five hundred dollars.

Item three bequeathed to D. L. Krigbaum, a special legacy of one thousand dollars.

Item four bequeathed to the daughter, Mary L. Krigbaum, for and during her natural life only, the use and income of the sum of two thousand dollars, which the executor is, by the provisions of the will, directed to invest in such security as to him may seem best, and hold in trust for her during her natural life, and pay to her the income or interest thereof, and upon the death of the said legatee, to divide the principal among the children of the said M. L. Krigbaum, the legatee; if no children, then to her brothers and sisters

Item five of the will provides as follows:

"Whereas, I entered into an ante-nuptial contract, in writing and under seal, on the 4th day of January, 1875, with Nancy M. Walker, now my wife, wherein and whereby I covenanted that my executor should, within a reason-

able time after my decease, set apart the sum of four thousand dollars to be by my said executor invested in bonds or stocks or loaned upon real estate security, the proceeds thereof to be paid to the said Nancy M. Walker, now my wife, annually during her natural life, and whereas the said Nancy M. Walker in and by said contract agreed to accept the interest or income upon said sum of four thousand dollars so to be invested as aforesaid and the same should constitute a jointure to the said Nancy M. Walker, in lieu of and in full satisfaction of any dower right, title, or claim, which might accrue to her by virtue of her marriage with me in any estate, real or personal or mixed which I might have at the time of marriage or subsequently acquire; now therefore, I hereby ratify and confirm said contract in every respect, and it is my will and I hereby authorize and direct my executor to take from the proceeds of the sale of personal property, or real estate, or both, the sum of four thousand dollars, as soon as the same can reasonably be done, and invest the same in bonds or stocks or loan the same upon real estate security, and pay over the interest or income thereof annually to my widow, Nancy M. Krigbaum, for and during her natural life. Said sum of four thousand dollars shall be held by my executor in trust for the purposes herein expressed for and during the natural life of the said Nancy. After her death, I will and direct that the same be divided or distributed between my then living children, share and share alike. The provisions of this item are in confirmation and ratification of said marriage contract herein named, and are not intended to be in addition thereto. Said Nancy shall have and enjoy the provisions of said contract for marriage, or the provisions of this will as she may elect, but she shall not have both, and her election to accept the provisions of the one shall be considered and held to be an abrogation of her rights under the other, and the provisions of this item are made and intended to be in lieu of any dower to which she would be entitled under the law as widow.''

Item six of the will bequeaths all the rest and residue of his property, real and personal, to his nine children equally, E. L. Krigbaum, J. A. Krigbaum, Ann M. Mussleman, W. C. Krigbaum, J. T. Krigbaum, G. D. A. Krigbaum, Altha Sutton, S. M. Krigbaum, and Stanis Krigbaum.

Item seven of the will provides that the entire interests of his son Stanis, and daughter Altha Sutton, received under his will, shall be held in trust for them by the executor, and he is authorized and directed to hold the same in trust, to invest the same in such investments as to him shall seem proper, keeping the interests separate and distinct, and to pay over the income arising from the said investments, less, taxes and expenses, to them separately during their lives, and upon their death, the principal is bequeathed to their children, if any; if not, then to their brothers and sisters.

Item eight of the will directs that all the estate, real an personal, be converted into money as soon as possible.

The widow elected to take under this will; Mr. Southard qualified as executor and proceeded to the administration of the trust. He converted all the property of the testator, real and personal into money, paid all the debts, all the special legacies, and took from, separated from the estate four thousand dollars, and invested the same in stock of the Ohio Iron Company, for the purposes of the trust, under the provisions of the will directing that the same be invested in trust for the widow. The income from this particular investment was paid to the widow for about twelve years, when the said Iron Company's stock ceased to pay dividends, the stock fell far below par, and eventually was sold under the order of the probate court. The sum realized therefrom was something over $600.

The said executor, Mr. Southard, under the provisions of item four of the will, invested the sum of two thousand dollar for the use and benefit of the legatee therein named, the income of which has been paid to the legatee, Mary L. Krigbaum, now Mary L Coon. That sum is thus still kept intact, and invested under the trust provided for in said item; that said legatee, Mary L. Coon, is still living and has no children.

Said executor, under item seven of the will, took from the estate, the amount of the legacies provided in item six of the will, for the children, Stanis Krigbaum and Mrs. Sutton, and invested it in securities upon the trust provided in item seven of the will, the income of which has been paid to them; but of the amount so invested for Mrs. Sutton, the executor now has only the sum of one hundred dollar. It appears that the fund set apart and invested for her was lost by reason of depreciation of the securities, or in some other manner, in which they had been invested. Each of the said legatees, Mrs. Sutton and Stanis Krigbaum, has children.

There are no other funds of any character or description, no estate of the testator in the hands of the executor unadministered, the estate having been fully settled in all other respects, and all other propety fully administered. After the estate was settled, the funds set apart for the several trusts were invested upon the trusts provided in the will of these several beneficiaries. M. Southard resigned, and one William

Krigbaum was appointed administrator de bonis non. While he was so acting, a suit was brought in this court by the widow against the executor and others, but I find that the only issue tried in that suit was, "From what time should the legacy of the widow bear interest." There was no other adjudication, or no other question made in that suit

After the four thousand dollars had been invested in the Ohio Iron Company's stock, upon the trust provided in item five, to be used for the benefit of the widow, by a proceeding in the probate court, the Ohio Iron Company stock was sold, and a sum something over six hundred dollars now remains from that investment, in the hands of the present administrator de bonis non.

It will be observed that this will makes provision for four separate trusts. It specifically directs that the funds of Stanis Krigbaum and Mrs. Sutton should be kept separate and distinct. These trusts are for four separate individuals, or beneficiaries. There is no dispute about the fact that the first executor took from, separated from the estate that came into his hands as executor, the sum of four thousand dollars, and invested the same in the stock of the Ohio Iron Company, and it is averred in the answer of the defense, and not denied by any reply, and was conceded at the hearing, that the money directed to be invested upon the trusts provided for the other beneficiaries, were separated, taken from the estate, and appropriated to trusts provided by the will, and that the beneficiaries have been in receipt of the income therefrom ever since, except in the case of Mrs. Coon, and the widow for the last few years, when the funds appropriated to the trusts for them have been diminished by depreciation of the securities in which they were invested.

It was alleged by counsel for plaintiff that there are here only two questions for the court to decide. First, is the widow entitled to be re-endowed? Second, may she compel payment of her annuity, and is there any fund available from which her annuity can be paid?

It will be observed that this is not an action against the executor for devastavit. It is not an action to recover a legacy. It is not a suit upon the bond of an executor, and it is not an action for the assignment of dower. As to the plaintiff's first proposition, is the widow entitled to be re-endowed? By her ante-nuptial contract, the widow expressly waived her claim to dower. If Henry Krigbaum, the testator, had died intestate, the widow could not have been re-endowed in any part of this estate. She would have possessed her rights under her ante-nuptial contract. Her rights then would have been under the contract simply and solely; but the

widow elected to take under the provisions of the will, and accepted the provisions of the will made for her, and the provisions of the will are made expressly for her, in lieu of her dower. Having, therefore, accepted the provisions of the will, having made her election thereunder, she waived her rights under her ante-nuptial contract, she barred her dower by the ante-nuptial contract, and she waived both her dower and the rights under her ante-nuptial contract by electing to take under the provisions of the will. She is not, therefore, a dowress. Her rights must be determined simply and solely under the provisions of this will and sections of the statutes relating to election by widows to take under the will. 45 Ohio St., 203; 39 Ohio St., 643.

She has then only the rights of a legatee under the will, and cannot now relieve herself of the consequences entailed by her election to take under this will. This perhaps answers sufficiently the first proposition of plaintiff's counsel.

As to the second proposition, may she compel this administrator de bonis non to provide for the payment of this annuity, and is there any fund from which the annuity can be paid? Is this plaintiff an annuitant? Is there any provision of the will that provides an annuity for her, or anything in this will, by any proper interpretation of it, that provides an annuity for the widow? Finding, as I have, the facts as to the former suit, i. e., that the only question adjudicated was the time from which the income of the four thousand dollars should be paid, there is nothing in that suit adjudicating the question in litigation here.

An annuity is a fixed sum granted or bequeathed, payable periodically, subject to such specific conditions as to duration as the grantor or donor may impose, and may, when the intention is expressed, be a charge on the real estate as well as on the personal. See Amer. & Eng. Encl. of Law, 2d Edition, vol. 2, p 387.

By the terms of item five of the will, the executor was to set apart, segregate from the moneys which he should have from the conversion of the real estate and personal estate into money, the sum of four thousand dollars, and to invest them, and hold them in trust during the lifetime of the widow, and to pay her the income thereafter annually; not a fixed sum, but only the annual income of said sum, an uncertain amount, at any rate a varying amount. Such a provision has none of the earmarks or indicia of an annuity. Under the provisions of the will, she had a general legacy, simply this and nothing more. The legacy was not made a charge upon any of the property

of the testator, and there is no provision in the will, either express or arising from necessary implication, that in the event of loss or diminution of the fund invested for her benefit, resort could be had to other funds, to make good the loss in her fund. The estate was settled; the debts were paid; the moneys for the four separate trusts were appropriated, and were invested upon the trusts provided for the four several beneficiaries How does the present executor or administrator de bonis non hold these separate funds? Does he hold as executor or as trustee merely? Suppose that by the will, instead of making the executor the several trustee for the four several beneficiaries, A. had been appointed trustee for the widow, B. trustee for Mrs. Mary L. Krigbaum, C. for Stanis, and for D. Mrs. Coon, and that the executor had paid over the four thousand dollars to the trustee for the widow, A., and to B., C., and D., the sums for their several trusts. Here then there would be plainly and clearly a severing of funds from the estate of the testator, an appropriation to the particular purposes pointed out in the will, and the executor's duty is at an end. When, as in this case, there has been a separation of funds and an appropriation by the executor to the particular purposes pointed out by the will, does not the executor, who is also named trustee for the funds, lose his character as executor as to these trust funds, and become simply and only a trustee? Is not that, after the severing and appropriation of the funds to the trusts specified, his sole character? If that be so, then these funds invested on trust for these legatees are no longer assets of the estate. As to them, he is not executor or administrator de bonis non, but is only holding them in the character of trustee, just as much as in the instance above mentioned, when the funds were paid over to the several trustees, A., B., C., and D

In Hill on Trustees, page 514, "When an executor who is also appointed trustee for the investment and application of legacies, has set apart and invested the legacies, he will be considered to have divested himself of the character of executor quoad those legacies and to have assumed that of trustee. Consequently, if the trust fund be afterward lost, the legatees will have no further claim on the testator's estate."

On page 337 of the same authority, I quote a paragraph from a decision, cited by the author.

"The Lord Chancellor, (Lord Cottenham) in deciding in favor of the plaintiffs observed: 'The whole fallacy of the defendant's argument consists in trying this suit as a suit for a legacy. The fund ceased to bear the character of a legacy as soon as it assumed the character of a trust fund. Suppose the fund had been given by the will to anybody else, as a trustee, and not to the executor, it would then be clearly the case of a breach of trust. What he would have done by paying it to a trustee, he has done by severing it from the testator's property, and appropriating it to the particular purpose pointed out by the will.''

Again, in the 13th Encyclopaedia, p. 163,

"When an executor who happens also to be named a trustee of a legacy to be laid out in stock, fully administered the estate and assented to the legacy, and retains the legacy in his hands, not as assets of the testator but as trustee of the legacy, then the principles which would apply to another trustee would apply to him. He is no longer clothed with the character of executor, but is as to the legacy a mere trustee·"

Again, in first Lewin on Trusts, p. 205,

"Where a fund is given to a person upon certain trusts, and he is appointed executor, as soon as he has severed the legacy from the general assets and appropriated it to the specific purposes, he dismisses the character of executor and assumes that of trustee."

"If the office of executor be, by the will, clothed with certain trusts, a person named as executor who proves the will and thereby makes himself executor, is held to draw upon himself the obligations knit to the office of trustee."

And the same principle is recognized in several cases in our own supreme court.

17 Ohio St., p. 156,

"It is true, generally, that where a party acting in a double capacity is possessed of a fund in one capacity which it is his duty (so to speak) to transfer to himself in another, such transfer will be in law presumed."

And in the 14th Ohio St., p. 274, case of Gandolfo v. Walker, I find the following:

"I admit that a testator may direct the continuance of a trade or business by his executor, as trustee, independent of his executorship; and such cases often occur. But they are always either where there is a devise or bequest to the executor in trust, or were part of the assets are specifically set apart and directed to be invested as a trust fund. In the former case the executor receives them at once as trustee, and they never become assets. In the latter, they are received by him as executor, and remain assets of the estate until so set apart and invested."

Now, unless these funds invested upon the trusts for the other beneficiaries, Mr. Coon and Stanis Krigbaum and the other legatee, can be treated as assets in the hands of the executor, then there

are no assets applicable to make good the loss of the funds invested in trust for the plaintiff. That perhaps sufficiently answers the plaintiff's second proposition.

Mrs. Coon and Stanis Krigbaum and the other legatee are resisting any scaling down by the trustee of the funds so provided and set apart for them. I can find no authority under the facts, the circumstances, or the law applicable to this case, whereby that may be done. If the widow's fund of four thousand dollars, instead of depreciating and decreasing in value, had multiplied ten fold, and had become worth forty thousand dollars instead of four thousand dollars, certainly the other legatees could not have come into court and have asked that she be cut down to four thousand dollars, and the thirty-six thousand excess turned over to them upon their trusts. In so far as the duties of the executor were concerned, they were fully executed and performed when the estate was settled up, and the sums provided for these legacies were set apart, separated from the estate, placed and invested upon the trusts provided in the will. When that was done, the executor became not a trustee of the four legatees jointly; he was as to each of them a several trustee, and the funds became the separate property of those beneficially interested therein, the trustee having only the legal title thereto. Each of these beneficiaries, when the provision had been made, had the right to maintain his separate suit for an account against his trustee, and there would have been a misjoinder of the parties if they had all four come into court asking for an accounting touching the interests of any particular one. The widow could have asked for an accounting touching the trust funds for her benefit. She had a right to know when and how they were invested, and if there has been maladmnistration in them, she can be heard upon that question. She had a right to faithful administraton on the part of her trustee. Misfortune overtook the investment for her, and it is now too late to ask all the other legatees to refund some part of their legacies to make good her loss.

It appears that there is something over six hundred dollars in the hands of the present trustee of the original four thousand. She is entitled to have the income of that paid to her annually, and the executor having charge of that sum will be directed to pay her the interest out of the moneys he has on hand remaining from the orginal investment of four thousand dollars. I do not remember the exact sum. And the administrator de bonis non, having asked the directions of the court as to the other legacies, I suppose that all that can be done will be to direct him to hold them as he has them, and pay the interest and the income to those respectively entitled thereto.